UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,
Plaintiff,

v.

AKIL SAEED DANIELS,
Defendant.

Case No.: 22cr2505-LL-1; 24-cv-00384-LL

**ORDER GRANTING DEFENDANT'S MOTION TO REDUCE SENTENCE** [ECF Nos. 106, 120]

**ORDER DENYING DEFENDANT'S MOTION FOR INEFFECTIVE ASSISTANCE OF COUNSEL** [ECF No. 97]

**ORDER DENYING DEFENDANT'S MOTION TO VACATE SENTENCE** [ECF No. 111]

**ORDER DENYING DEFENDANT'S MOTION TO COMPEL DNA TESTING** [ECF No. 116]

**ORDER DENYING DEFENDANT'S MOTION TO APPOINT COUNSEL** [ECF No. 122]

Before the Court is Defendant Akil Saeed Daniels's Motion to Vacate, Set Aside, or Correct a Sentence pursuant to 28 U.S.C. § 2255 alleging ineffective assistance of counsel by his attorney Benjamin P. Davis. ECF No. 111. Defendant also filed a Motion for Ineffective Assistance of Counsel [ECF No. 97], Motion to Reduce Sentence [ECF No. 106], Motion to Compel and Preserve DNA Testing [ECF No. 116], Motion to Request Decision [ECF No. 120], and Motion to Appoint Counsel to Obtain Final Disposition [ECF No. 122]. Plaintiff filed Oppositions [ECF Nos. 110, 114, 124] and Defendant filed Replies [ECF Nos. 112, 115]. Having reviewed the parties' briefs, and for the reasons set forth below, the Court **GRANTS** Defendant's Motion to Reduce Sentence and **DENIES** Defendant's remaining motions.

## I. BACKGROUND

On January 27, 2023, a jury found Defendant guilty of two counts of bank robbery. ECF No. 65. On April 24, 2023, this Court sentenced Defendant to 110 months' custody, with all counts to run concurrently, plus an additional three years of supervised release. ECF No. 86 at 2–3. This sentence was 14 months above the high end of the sentencing guidelines' range of 77 to 96 months, as calculated at the time. ECF No. 93 at 32:15–33:6. In addition, the Court sentenced Defendant to 10 months for violating his conditions of supervised release, for a total of 120 months in custody. ECF No. 93 at 48:1–4.

On May 26, 2023, Defendant filed a Motion for Ineffective Assistance of Counsel, arguing that his defense counsel acted ineffectively because counsel failed to pursue fingerprint and DNA evidence, allowed the prosecution to suppress evidence, and allowed a lay witnesses to give expert testimony. ECF No. 111 at 2–8.

On January 26, 2024, Defendant filed a Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(2), alleging that an update to the sentencing guidelines should reduce his criminal history score and lower the guideline range. ECF No. 106 at 1–2.

On February 26, 2024, Defendant filed a Motion to Vacate, Set Aside, or Correct his 110-month sentence under 28 U.S.C. § 2255 ("Motion to Vacate"), alleging the same facts

and arguments found in his Motion for Ineffective Assistance of Counsel [ECF No. 97]. ECF No. 111.

On July 1, 2024, Defendant filed a Motion for DNA Testing Pursuant to 18 U.S.C. § 3600, arguing that an analysis of the untested DNA will "prove" that the Defendant is "NOT the robber" and that testing would have "exonerated [Defendant] of all charges." ECF No. 116 at 1–6.

On April 17, 2026, Defendant filed a Motion to Appoint Counsel to Obtain Final Disposition, stating that he "believes the appointment of counsel is in the best interest of justice" to adjudicate his "meritorious claim" for a reduction of his sentence. ECF No. 122 at 1.

## II. LEGAL STANDARD

A federal prisoner in custody may move to vacate, set aside, or correct the sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255. To warrant relief under 28 U.S.C. § 2255, a prisoner must allege a constitutional, jurisdictional, or otherwise "fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." *U.S. v. Timmreck*, 441 U.S. 780, 783 (1979) (quoting *Bowen v. Johnston*, 306 U.S. 19, 27 (1939)). If it is clear that a prisoner has failed to state a claim, or has "no more than conclusory allegations, unsupported by facts and refuted by the record," a district court may deny a § 2255 motion without an evidentiary hearing. *U.S. v. Quan*, 789 F.2d 711, 715 (9th Cir. 1986).

## III. DISCUSSION

Because the Motion for Ineffective Counsel [ECF No. 97] and Motion to Vacate [ECF No. 111] have overlapping claims, the Court will address these first. Then the Court will address the Motion to Compel DNA Testing [ECF No. 116], the Motion to Reduce Sentence [ECF No. 106], and the Motion to Appoint Counsel [ECF No. 122].

**A. Motion to Vacate and Motion for Ineffective Counsel**

In his Motion to Vacate, Defendant asserts that his defense counsel at trial violated his Sixth Amendment right to effective assistance of counsel. To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's representation (1) "fell below an objective standard of reasonableness" and (2) deprived the defendant of a fair and reliable trial. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). There is a strong presumption that counsel acted "within the wide range of reasonable professional assistance," rendered "adequate assistance," and exercised "reasonable professional judgment." *Id.* at 689–90. Therefore, a defendant must rebut this presumption of sound trial strategy to prevail on their claim. *Id.* at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

The first prong of the *Strickland* test requires a defendant to show that counsel made errors "so serious" that the defendant did not receive adequate representation as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Furthermore, a court must evaluate counsel's performance "from counsel's perspective at the time" of the alleged error. *Id.* at 690. "Rare are the situations in which the 'wide latitude counsel must have in making tactical decisions' will be limited to any one technique or approach." *Harrington v. Richter*, 562 U.S. 86, 106–08 (2011) (quoting *Strickland*, 466 U.S. at 689) ("Even if it had been apparent that expert blood testimony could support [defendant's] defense, it would be reasonable to conclude that a competent attorney might elect not to use it.").

The second prong requires a defendant to establish that counsel's errors were "so serious" that they "deprive[d] the defendant of a fair trial." *Strickland*, 466 U.S. at 687. Thus, a defendant must show that counsel's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Denham v. Deeds*, 954 F.2d 1501, 1505 (9th Cir. 1992) (citing *Strickland* at 687–90). Unless a defendant can satisfy both prongs of the *Strickland* test, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687.

Here, Defendant claims that his counsel acted ineffectively by: (1) allowing the prosecution to suppress evidence, (2) failing to test the DNA sample from the crime scene, (3) failing to pursue the fingerprint evidence lifted from the crime scenes, and (4) allowing a lay witness to give expert testimony. ECF Nos. 97, 111. The Court will discuss each in turn.

**i. Suppressed Evidence**

**a. Laboratory Results**

Defendant argues that "defense counsel allowed the prosecution to suppress evidence." ECF No. 111 at 7. Specifically, Defendant asserts that the prosecution did not exchange the fingerprint test results with defense counsel and provided "nothing in discovery" that supports the theory that the results came back inconclusive, which "proves the lab results were suppressed." ECF No. 111-1 at 5. In their Opposition, the Government submitted the fingerprint reports in question—which include the discovery receipt—to demonstrate they did not suppress evidence. ECF No. 114, Ex. A, B, C, H, and K (referencing dusting at the crime scene); Ex. E (California Coast Credit Union fingerprint analysis); Ex. F (Mission Federal Credit Union fingerprint analysis). The reports indicated that the fingerprints from Mission Federal Credit Union were of "no value," and that the fingerprints from California Coast Credit Union were "of no value . . . due to a lack of useable friction ridge detail." ECF No. 114, Ex. E, F. However, the exhibits do not contain the signature of defense counsel on the discovery receipt and thus fail to indicate whether the defense counsel received these exhibits before trial. *Id.*

Nonetheless, even if Defendant is correct that the Government did not exchange the fingerprint analysis with defense counsel, the Court is inclined to deny Defendant's claims because the fingerprint report yielded inconclusive results and the laboratory could not use the fingerprints to identify the robber. Thus, the fingerprint reports neither corroborate nor absolve Defendant's guilt. Accordingly, the Court does not find that the defense counsel acted ineffectively by allowing the Government to suppress material evidence.

/ / /

**b. Trial Testimony**

Defendant further argues that the evidence was suppressed because Federal Bureau of Investigation ("FBI") Special Agent Jesse Chappell ("Chappell") stated that the fingerprints analyzed were "NOT A MATCH" to Defendant, but then later "changed his testimony and said the lab results deemed the fingerprints [to be] of no value." ECF No. 111-1 at 5.

The Court turns to the trial transcript to determine whether Chappell in fact changed his testimony:

> Q. Okay. You're aware that a print or something was recovered and sent to the Chula Vista Police Lab, correct?
> A. Yes.
> Q. And that the Chula Vista Police Lab did not return a result connecting it to Mr. Daniels, correct?
> A. Can you rephrase?
> Q. It didn't return that there was a print matching Mr. Daniels, correct?
> A. Correct.
> Q. And you are also aware that the San Diego Sheriffs collected fingerprint evidence from the Mission Federal Credit Union, correct?
> A. Correct.
> Q. And you're aware that that evidence was submitted to the San Diego Sheriff's Crime Lab, correct?
> A. According to their reports, yes.
> Q. Yes. And you're aware that no fingerprint was returned that connected Mr. Daniels to that robbery, correct?
> A. No fingerprint return.
> Q. To be more specific, no fingerprint connecting him to that scene, correct?
> A. Correct.

ECF No. 68 at 205:8–206:6 (cleaned up). During re-direct, the Government clarifies Chappell's testimony during the cross-examination:

> Q. [Defense counsel] asked some questions about whether or not the fingerprint results that had been collected from the Chula

> Vista Police Department linked his client, Mr. Daniels, to the fingerprints. Is that consistent with your memory?
> A. Yes.
> Q. And did you answer no?
> A. Correct.
> Q. Did those results connect to anyone, not just Mr. Daniels?
> A. No. Those results were deemed of no value.
> Q. And with respect to the results from the Mission Federal Credit Union, there was the same line of questioning as to whether or not those results were connected to Mr. Daniels? Do you recall that?
> A. Yes. According to the lab results, those were also deemed of no value.

ECF No. 68 at 240:7–22 (cleaned up). The transcripts demonstrate Chappell consistently testified that the fingerprint evidence could not provide a match to Defendant *or* anybody else. In fact, multiple witnesses testified that the fingerprint evidence was unusable for testing and thus could not be connected to anybody. ECF No. 68 at 84:24–86:25 (Deputy Sheriff Francisco Brambila ("Brambila") stating that the possibility of getting "good" fingerprint results was "pretty low" due to the rough-textured, high-touch surface), 147:8–10 (Brambila stating fingerprint results did not identify any particular individual), 177:22–78:1 (Chappell stating there were no "usable leads" from the fingerprints recovered). Thus, the Court find that Chappell's testimonies were consistent and does not demonstrate that the Government suppressed the evidence.

**ii. DNA Sample**

Defendant argues defense counsel failed to provide adequate representation by not having the DNA evidence tested because the DNA test could have "changed the outcome of the trial." ECF No. 111-1 at 8–9. While a DNA test could change the outcome of a trial, defense counsel has a wide range of discretion concerning trial strategy. ECF No. 111-1 at 10; *Strickland*, 466 U.S. at 689. "Where there [are] enough other incriminating evidence and an explanation for the DNA result, science alone cannot prove a prisoner innocent." *Dist. Attorney's Off. For Third Jud. Dist. v. Osborne*, 557 U.S. 52, 62 (2009). A defense

counsel may consider the evidence collected and decide that "even favorable DNA test results would not make a difference in [a] case." *LaFevers v. Gibson*, 182 F.3d 705, 722 (10th Cir. 1999) (denying defendant's claim for ineffective assistance of counsel because defendant requested DNA testing could not "prove that he was not at the crime scenes or that he was not involved in [victim's] murder").

As previously stated during the sentencing hearing, while the Government "could have and potentially should have sent the DNA for testing and the fingerprinting, there's no requirement" for them to do so. ECF No. 93 at 63:18–21. Further, this Court has already found that the agents testified credibly about how the high-traffic areas likely would not have yielded sufficient results and that "there was sufficient evidence to convict" despite the lack of DNA testing. *Id.* at 64. For example, the Government presented evidence of Defendant's car matching the robber's (ECF No. 68 at 77, 90–92, 148, 167–68, 179, 222; ECF No. 114, Ex. U, V, W), Defendant's clothing matching the robber's (ECF No. 68 at 12, 77, 96–97, 115–16, 122, 163, 175; ECF No. 114, Ex. T, X, Y), 23 $2 bills in Defendant's possession (the robber stole 38 $2 from one of the credit unions) (ECF No. 67 at 152; ECF No. 68 at 21–22, 25–26, 97, 124, 142), and Defendant's phone searches such as "recent bank robberies 2022," "can I still spend a $2 bill," and "what store can I buy yellow safety vest?" (ECF No. 68 at 192–95; ECF No. 114, Ex. Z).

Given the Government's abundant evidence, defense counsel likely had a strong reason to think that testing the DNA "could destroy [Defendant's] case" and expose Defendant's defense if the DNA came back and matched Defendant. *Harrington*, 562 U.S. at 108 (finding defense attorney "had reason to question the truth of his client's account" and thus "need not pursue an investigation that would be fruitless, much less one that might be harmful to the defense"). Considering the evidence the Government presented, this Court finds that defense counsel's representation did not fall below an objective standard of reasonableness.

The Court also finds that Defendant's reliance on *Williams v. Lazaroff*, 2015 U.S. Dist. Lexis 175847, *8 (2015)—an Ohio District Court case—is misplaced. Defendant

argues there was "no excuse" for his defense counsel to not test the DNA sample because there are "countless cases" like *Lazaroff* where a touch DNA sample contains a mixture of multiple people's DNA and "experts are still able to make an accurate match." ECF No. 111-1 at 8–9. In *Lazaroff*, a forensic scientist matched the defendant to the DNA lifted from a single-use, smooth-textured drink bottle in a convenience store cooler. Here, however, the DNA sample was lifted from a high-touch, rough-textured bank countertop, rendering the DNA sample unusable. *See* ECF No. 68 at 147:11–21 (Brambila testified that "the high volume of people going into the bank and touching [the counter]" may have provided "too much mixture" to provide a positive identification); ECF No. 68 at 156:6–18 (Chappell testified that DNA was not tested because it was found on a "high-touch surface" and touch DNA "has a lower probability of a 1-to-1 comparable sample").

Moreover, the *Lazaroff* defendant was found guilty because the DNA on the bottle matched the defendant, further demonstrating how a positive match can destroy a defendant's case while an inconclusive or untested DNA evidence likely would not yield such outcome. Because high-touch areas do not typically provide clear results and may have conversely returned a positive match to Defendant, the defense counsel acted within the range of reasonable professional judgement when he chose not to hire a DNA expert witness.

In fact, instead of testing the DNA and possibly receiving a positive match, the defense counsel chose to attack the Government's failure to test the DNA, by repeatedly stressing how "shocking" it was that the Government "didn't bother to" test the DNA collected against Defendant's DNA sample. ECF No. 67 at 157, 159; ECF No. 68 at 133–36, 149–50, 206–11; ECF No. 69 at 78–79, 81–82, 93–94, 99. Counsel's choice to not pursue the DNA evidence and instead cast doubt on the Government's case "shows merely that the defense strategy did not work out as well as counsel had hoped, not that counsel was incompetent." *Harrington*, 562 U.S. at 109–11 ("When defense counsel does not have a solid case, the best strategy can be to say that there is too much doubt about the State's

theory for a jury to convict."). Thus, this Court does not find that counsel rendered inadequate assistance by not having the DNA evidence tested.

**iii. Fingerprint Analysis**

Defendant argues defense counsel rendered ineffective assistance by "refus[ing] to get the results of the fingerprint evidence collected at both crime scenes." ECF No. 111 at 4. However, Defendant does not substantiate his conclusory statements about counsel's ineffective assistance and instead argues about what counsel could have done—such as asking about points of similarity or dissimilarity or calling an expert witness. ECF No. 111-1 at 7–8. None holds water.

As discussed in Section A.i.a, the Government produced the fingerprint results to the defense counsel. *See* ECF No. 114, Exs. A, B, C, E, F, H, K. Thus, Defendant's argument that counsel refused to obtain fingerprint results is unsubstantiated.

Moreover, the defense counsel effectively cross-examined the Government's witnesses at trial and confirmed that "no fingerprint connect[ed]" Defendant to the crime scene. ECF No. 68 at 204–06; ECF No. 69 at 81–82, 93, 99. This admission was key to defense counsel's strategy, as counsel repeatedly referenced how the Government did not have forensic evidence to link Defendant to the crime. *See* ECF No. 97 at 1 ("[M]y lawyer told me … [since] the prosecution isn't asking any questions about the fingerprint evidence … [then] … [he will] not either."). Thus, this Court does not find that the defense counsel rendered ineffective assistance by refusing to get the fingerprint report.

**iv. Lay Witness**

Defendant argues that defense counsel "allowed a lay witness to speak as an expert witness," by letting the FBI agent and deputy sheriff testify about the DNA and fingerprint evidence. ECF No. 111 at 8. Defendant further claims that the agents "were wrong" when they testified that the samples could not yield a result. ECF No. 111-1 at 15. The Government contends that the agents' testimonies were "rationally based on their perceptions since they were testifying about their experience and not as experts." ECF No. 114 at 12. The Court agrees.

Lay witnesses may form an opinion during their testimony if it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701. Lay witness testimony "results from a process of reasoning familiar in everyday life" whereas expert witness testimony "results from a process of reasoning which can be mastered only by specialists in the field." *See* Fed. R. Evid. 701 advisory committee's notes (2000) (quoting *State v. Brown*, 836 S.W.2d 530, 549 (1992)). "[T]he fact that a witness's testimony pertains to scientific matters, or conveys opinions drawn from the witness's own experiences with such matters, does not automatically render it expert testimony." *U.S. v. Holmes*, 163 F.4th 547, 560 (9th Cir. 2025) ("[A]n opinion is not automatically deemed 'expert' within the meaning of Rule 702 merely because it is offered by a lay witness drawing on their own unique experiences or personal knowledge.").

Here, the agents provided an insight into why the police agencies did not submit the DNA sample for testing. For instance, Brambila explained that DNA was not submitted because based on his "training and experience in speaking with crime lab analysts in other cases, the probability of identifying somebody through touch DNA" was unlikely. ECF No. 68 at 147:15–21. Chappell also testified that DNA was not analyzed because it had a "lower probability" of yielding a usable result, which he learned from previous experiences and conversations with crime lab experts. ECF No. 68 at 178:18–79:1; *see e.g.*, *U.S. v. Moore*, 825 F. App'x 453, 456 (9th Cir. 2020) (identifying officer as giving law opinion testimony when "officer based his testimony on his training and experience as a law enforcement officer" and the testimony was "helpful to explain" defendant's jailhouse phone calls). Moreover, the agents repeatedly clarified that they were "not a fingerprint expert" or "a DNA expert," and that they did not "have any certifications in DNA analysis." ECF No. 68 at 86:7–14, 178:20–23. Thus, the Court finds that these testimonies were lay opinion testimonies, not expert testimonies. *See, e.g.*, *Hassan v. Morawcznski*, No. CIV S-05-2144 MCE DAD P, 2009 WL 2407694, at *13 (E.D. Cal. Aug. 4, 2009), *subsequently*

*aff'd*, 405 F. App'x 129 (9th Cir. 2010) (categorizing deputy as giving lay opinion testimony when deputy gave an opinion based on his experience about how often "take downs" lead to a subject suffering broken ribs); *U.S. v. VonWillie*, 59 F.3d 922, 929 (9th Cir. 1995) (holding that a Drug Enforcement Bureau officer's observations during his career about how often drug traffickers possessed and used weapons were "common enough and require[d] such a limited amount of expertise" that the testimony could be deemed lay opinion testimony).

The Court also rejects Defendant's claim that the defense counsel failed to object to the agents speaking as expert witnesses and therefore provided ineffective assistance. ECF No. 111-1 at 16. The trial transcript demonstrates that the defense counsel objected throughout the trial to prevent expert testimony. *See* ECF No. 68 at 82 (made foundation and hearsay objections when prosecution asked Brambila whether there were any usable prints from Chula Vista), 85–86 (objected to Brambila's statements "being expert testimony"), 208 (specifically stated "I'm not going to elicit any scientific testimony" about fingerprint and DNA evidence). Therefore, the Court does not find that the defense counsel allowed the lay witnesses to speak as expert witnesses.

For the reasons discussed above, this Court **DENIES** Defendant's Motion for Ineffective Counsel [ECF No. 97] and Motion to Vacate [ECF No. 111].

**B. Motion to Compel DNA Testing**

Defendant argues that a DNA test will exonerate him and prove he is "completely innocent." ECF No. 116 at 1. The Government contends that Defendant has failed to identify how the DNA would establish his actual innocence or how it would "raise a reasonable probability that [Defendant] did not commit the offense." ECF No. 124 at 2; *see* ECF No. 74. The Court agrees. *See supra*, Section A.ii.

To qualify for postconviction relief, a defendant must—among other requirements—show how the DNA evidence would align with the defense presented at trial and establish the defendant's actual innocence. 18 U.S.C. § 3600(a)(6). Further, a defendant must demonstrate that DNA testing would raise a "reasonable probability" that the defendant is

actually innocent of the crime. 18 U.S.C. § 3600(a)(8). "Where the presence or absence of the movant's DNA would not show actual innocence, there is no reason to test for it." *U.S. v. Watson*, 792 F.3d 1174, 1180 (9th Cir. 2015).

Here, Defendant's theory of defense neither establishes his innocence nor provides a reasonable probability of innocence. Defendant merely asserts that he "has claimed his innocence since the day he was charged with these 2 counts of bank robbery, [and he] has even taken his case to trial to try to prove his innocence." ECF No. 116 at 2. Defendant does not, however, explain how a negative DNA result will exonerate him. *See, e.g.*, *Baker v. Yates*, No. 04-CV-1533 H, 2007 WL 2156072, at *16 (S.D. Cal. July 25, 2007), *aff'd*, 339 F. App'x 690 (9th Cir. 2009) (denying petition for writ of habeas corpus partly because negative DNA results "only would have slightly increased the strength of the argument" that no DNA or blood evidence tied defendant to the crime). As discussed at length in Section A.ii., the Government presented abundant evidence to convict Defendant without a DNA testing. Thus, he fails to demonstrate how DNA testing would prove his actual innocence.

Defendant also fails to show how DNA testing would raise a reasonable probability that he did not commit the offense. A negative DNA result does not prove Defendant's absence from the crime scene or exonerate Defendant in the same way a negative DNA result would exonerate a defendant facing rape charges. An inconclusive result may indicate that Defendant did not touch the bank counter during the robberies or that he barely scraped it with his knuckle, while a negative result may end up matching a bank teller or customer. Like the inconclusive fingerprint results, a negative or inconclusive DNA result would not overthrow the other evidence the Government presented.

Defendant's bare allegation of innocence "hardly meets the rigorous standard" to require DNA testing under 18 U.S.C. § 3600(a). *U.S. v. Harrison*, No. CR-03-0016-RHW, 2012 WL 12897947, at *2 (E.D. Wash. Sept. 14, 2012), *aff'd*, 536 F. App'x 720 (9th Cir. 2013) (denying a motion for DNA testing when defendant failed to explain how DNA results would establish his actual innocence in light of his earlier statements and other

evidence presented at trial, which ended in a conviction by the jury). Because Defendant does not satisfy the requirements of 18 U.S.C. § 3600, the Court **DENIES** Defendant's Motion to Compel DNA Testing [ECF No. 116].

**C. Motion to Reduce Sentence**

The Court sentenced Defendant to 110 months in custody for the bank robberies and an additional ten months of consecutive custody for violation of supervised release conditions for a total of 120 months. ECF No. 93 at 33:2–6, 48:1–4. At the time of sentencing, Defendant drew the Court's attention to a pending modification that would apply a one-level adjustment instead of a two-level adjustment if the defendant had seven or more criminal history points (Defendant had six). ECF No. 71 at 14. Since Congress had not confirmed the modification at the time of sentencing and the Defendant merely speculated that this modification would apply retrospectively, this Court declined to apply the modification and applied the two-level adjustment. *Id.* at 31–32. Nevertheless, this Court invited Defendant to file a motion when the modification went into effect. *Id.* at 31.

After the modification was passed and applied retroactively (*see* USSG 1B1.10(a)(1), (d), cmt. n.7), Defendant filed his Motion to Reduce Sentence. ECF No. 106. When a sentencing range has been lowered by the Sentencing Commission, a defendant may ask the sentencing court to reduce the term of imprisonment if the reduction is "consistent with the applicable policy statements" and conforms with the section 3553(a) factors. 18 U.S.C.A. § 3582(c)(2).

USSG § 4A1.1(e) states that a judge shall "add 1 point if the defendant (1) receives 7 or more points under [the previous subsections], and (2) committed the instant offense while under any criminal justice sentence," including parole. USSG § 4A1.1(e). Because Defendant had six criminal history points from his previous criminal convictions, he does not meet the threshold of this subsection and his criminal history score remains at six. At the time of sentencing, his criminal history score was eight. The Court now reclassifies the Defendant from a Criminal History Category IV—with a range of 77 to 96 months in custody—to a Category III—with a range of 63 to 78 months. The Court originally deviated

upward by 14 months and will do so again here to bring Defendant's sentence to 92 months. By adding 10 months of consecutive custody from the revocation for violating his conditions of supervised release, Defendant shall now serve 102 months in custody instead of the original 120 months. Therefore, the Court **GRANTS** Defendant's Motion to Reduce Sentence [ECF Nos. 106, 120].

### D. Motion to Appoint Counsel

The Court **DENIES AS MOOT** Defendant's Motion to Appoint Counsel [ECF No. 122] because the Court has addressed and resolved Defendant's claims and none remain active.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion to Vacate, Set Aside, or Correct His Sentence under 28 U.S.C. § 2255; Motion for Ineffective Assistance of Counsel; and Motion to Compel DNA Testing. The Court **DENIES AS MOOT** Defendant's Motion to Appoint Counsel and Motion to Request Decision.

The Court **GRANTS** Defendant's Motion to Reduce Sentence under 18 U.S.C. § 3582(c)(2) and **RESENTENCES** him to 102 months in custody.

**IT IS SO ORDERED**.

Dated: July 31, 2026

Honorable Linda Lopez
United States District Judge